UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CENTRAL BOAT RENTALS, INC.** § | | |
|     **Plaintiff** § | | |
| **v.** § | | |
| § | | |
| **THREE MILE DRYDOCK AND REPAIR,** § | **Case No.** | |
| **LLC** § | | |
|     **Defendant** § | **Admiralty** | |
| § | | |
| **and** § | | |
| § | | |
| **BUNKER ONE (USA) INC.** § | | |
|     **Garnishees** | | |

## CENTRAL BOAT RENTALS, INC. VERIFIED COMPLAINT

COMES NOW Plaintiff, Central Boat Rentals, Inc. ("CBR") and files this, its Verified Complaint, against Defendant, Three Mile Drydock & Repair, LLC ("Three Mile") and Garnishee, Bunker One (USA), Inc. and would respectfully show the Court as follows:

## JURISDICTION AND VENUE

1. This is an action instituted in accordance with the provisions of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA") in order to obtain security and jurisdiction, and no waiver is intended of the rights of CBR to commence arbitration in New York, New York, in accordance with the terms, and conditions of the two hereinafter described bareboat charter agreement between CBR and Three Mile.

2. This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333 because it involves a claim for breach of certain maritime contracts, *i.e.*, the bareboat charter of two barges. The claims herein are brought under Rule B to the Supplemental Rules for Admiralty or Maritime Claims & Asset Forfeiture Actions ("Rule B").

1

## PARTIES

3. At all material times, CBR was, and still is, an entity organized and existing under the laws of the State of Louisiana with an address of 1640 River Road, Berwick, LA 70342. At all material times, CBR and Three Mile were parties to two bareboat charters under which CBR chartered two barges to Three Mile in exchange for the payment of charter hire and other promises.

4. At all material times, Three Mile was and is an Alabama limited liability company.

5. Three Mile cannot be found within this District within the meaning of Rule B, but as alleged herein and upon information and belief, has, or will have during the pendency of this action, debts, accounts and property in this District.

6. Upon information and belief, at all material times, Bunker One was, and still is, an entity organized and existing under the laws of Alabama, but registered to do business in the State of Texas with its headquarters in Houston, TX at 440 Louisiana Street, Suite 2100, Houston, TX 77002. Bunker One can be served with process through its registered agent United Corporate Services, Inc., 815 Brazos Street, Suite 500, Austin, TX 78701.

7. This is an action to obtain jurisdiction over Three Mile and security for CBR's claims that arise out of Three Mile's breaches of the two bareboat charters which are attached hereto as Exhibits A and B.

## CHARTER OF THE CBR 2015

8. The first of the two charters relates to an unmanned tank barge the CBR 2015 o.n. 1240420.

9. On November 1, 2018, CBR and Three Mile entered into a bareboat charter for Three Mile to bareboat charter (as charterer) from CBR the CBR 2015 on terms set forth in the

contract attached hereto as Exhibit A (the "CBR 2015 Charter"). The term of the CBR 2015 Charter was November 1, 2018 until March 10, 2021 with optional extensions.

10. CBR and Three Mile thereafter twice extended the term of the CBR 2015 Charter until February 14, 2024. *See* Exhibit A.

11. On February 14, 2024, CBR and Three Mile entered into an Act of Extension and Amendment of Charter Agreement ("CBR 2015 Extension") to extend the term of the CBR 2015 Charter until February 15, 2025. The parties also amended the charter hire to $1,300 per day from February 15, 2024 until the CBR 2015 is returned to CBR as set forth in the CBR 2015 Charter.

12. Pursuant to Section 1 of the CBR 2015 Extension, either party was entitled to "cancel the Charter by giving the other party ninety (90) days' written notice of intent to do so." *See* Exhibit A.

13. Pursuant to Article V of the CBR 2015 Charter, Three Mile was required to "maintain and repair the Vessel [CBR 2015] in the same condition and classification, state of cleanliness and repair as when delivered to Charterer [Three Mile] (and have the Vessel repaired when necessary) ordinary wear and tear excepted . . . ." Exhibit A.

14. Pursuant to Article XII of the CBR 2015 Charter, Three Mile was required to redeliver the CBR 2015 to CBR in the "same good order and condition as when received by Charterer [Three Mile], ordinary wear and tear . . . except and if upon tender or redelivery, it be not then in such condition charter hire shall continue during the period of repair and reconditioning. It is expressly provided that Owner or Charterer may, without prejudice, pay for all such repairs and reconditioning whether the repairs were necessitated by Charter's failure to comply with Article VI or by Charterer's operation of the vessel. Any such party paying such cost of repairs or

reconditioning may recover the cost thereof from the party liable therefore including reasonable attorneys fees, and all other cost of collection." Exhibit A.

15. On August 5, 2024, CBR gave notice that it was exercising its right to terminate the charter of the CBR 2015 under Section 1 of the CBR 2015 Extension and gave ninety days' notice of termination. However, as of the end of the ninety-day period, the CBR 2015 was not in the same condition as when it was delivered (ordinary wear and tear excepted) so pursuant to Article XII, Three Mile was required to repair the CBR to place it back in the same condition as upon delivery.

16. While repairs have been effectuated to the CBR 2015 and it has been redelivered to CBR, Three Mile has failed to pay for the repairs to the CBR 2015 and has failed to pay charter hire which accrued while the CBR 2015 was being repaired as required by the contract.

17. The repairs to the CBR total $128,148.66. The unpaid charter hire for the CBR 2015 totals no less than $63,700.00.

18. Under Article III of the CBR 2015 Charter, "any amount due from Charterer not paid when due shall bear interest at six percent (6%) per annum from the due date . . . ." Exhibit A.

19. Under Article XIV of the CBR 2015 Charter, any disputes between CBR and Three Mile are to be referred to arbitration in New York in accordance with the rules of the Society of Maritime Arbitrators.

20. Pursuant to Article XVI of the CBR 2015 Charter, CBR is entitled to attorneys' fees for its collection efforts.

**CHARTER OF THE CBR 2016**

21. The second of the two charters relates to an unmanned tank barge the CBR 2016 o.n. 1240419.

22. On November 1, 2018, CBR and Three Mile entered into a bareboat charter for the CBR 2016 on terms set forth in the contract attached hereto as Exhibit B (the "CBR 2016 Charter"). The term of the CBR 2016 Charter was November 1, 2018 until March 10, 2021 with optional extensions.

23. CBR and Three Mile thereafter twice extended the term of the CBR 2016 Charter until February 14, 2024.

24. On February 14, 2024, CBR and Three Mile entered into an Act of Extension and Amendment of Charter Agreement ("CBR 2016 Extension") to extend the term of the CBR 2016 Charter until February 15, 2025. The parties also amended the charter hire to $1,300 per day from February 15, 2024 until the CBR 2016 is returned to its owner. Exhibit B.

25. Pursuant to Section 1 of the CBR 2016 Extension, CBR either party could "cancel the Charter by giving the other party ninety (90) days' written notice of intent to do so." *See* Exhibit B.

26. Pursuant to Article V of the CBR 2016 Charter, Three Mile was required to "maintain and repair the Vessel [CBR 2015] in the same condition and classification, state of cleanliness and repair as when delivered to Charterer [Three Mile] (and have the Vessel repaired when necessary) ordinary wear and tear excepted . . . ." Exhibit B.

27. Pursuant to Article XII of the CBR 2016 Charter, Three Mile was required to redeliver the CBR 2015 to CBR in the "same good order and condition as when received by Charterer [Three Mile], ordinary wear and tear . . . except and if upon tender or redelivery, it be

5

not then in such condition charter hire shall continue during the period of repair and reconditioning. It is expressly provided that Owner or Charterer may, without prejudice, pay for all such repairs and reconditioning whether the repairs were necessitated by Charter's failure to comply with Article VI or by Charterer's operation of the vessel. Any such party paying such cost of repairs or reconditioning may recover the cost thereof from the party liable therefore including reasonable attorneys fees, and all other cost of collection." Exhibit B.

28. On August 5, 2024, CBR gave notice that it was exercising its right to terminate the charter of the CBR 2016 under Section 1 of the CBR 2016 Extension and gave ninety days' notice of termination. However, as of the end of the ninety day period, the CBR 2016 was not in the same condition as when it was delivered (ordinary wear and tear excepted) so pursuant to Article XII, Three Mile was required to repair the CBR 2016 to place it back in the same condition as upon delivery and continue to pay charter hire until such time.

29. The CBR 2016 has not been repaired or returned to the required condition and has not been redelivered to CBR as of the date of the filing of this Complaint.

30. The repairs for the CBR 2016 are estimated at $118,203.83.

31. The unpaid charter hire totals $196,300.00. In addition, because the CBR 2016 has not been repaired and redelivered, the CBR 2016 is accruing fleeting and tug charges in the amount of no less than $16,275. Both charter hire and fleeting charges continue to accrue since the CBR 2016 has not been redelivered.

32. Under Article III of the CBR 2016 Charter, "any amount due from Charterer not paid when due shall bear interest at six percent (6%) per annum from the due date . . . ." Exhibit B.

6

33. Under Article XIV of the CBR 2016 Charter, any disputes between CBR and Three Mile are to be referred to arbitration in New York in accordance with the rules of the Society of Maritime Arbitrators.

34. Pursuant to Article XVI of the CBR 2016 Charter, CBR is entitled to attorneys' fees for its collection efforts.

35. Three Mile has breached the CBR 2015 Charter and the CBR 2016 Charter by failing to pay amounts owed under the contracts. CBR has made amicable demand on Three Mile for payment of the outstanding amounts owed under the CBR 2015 Charter and the CBR 2016 Charter and for re-delivery of the CBR 2016, but Three Mile has not done so.

36. As of the date of this filing, Three Mile owes CBR no less than $522,627.04 exclusive of costs, interest, and attorneys' fees. The amount owed continues to increase until such time as the CBR 2016 is redelivered and the unpaid invoices are paid in full.

## APPLICATION FOR RULE B RELIEF

37. The requirements of Rule B are met. First, CBR has a valid maritime claim against Three Mile, *i.e.*, a claim for breach of the aforementioned charters, which are maritime contracts.

38. Second, Three Mile cannot be found within the District. (*See* attached Attorney's Declaration that Defendant Cannot Be Found Within the District)

39. Third, upon information and belief Three Mile has, or soon will have, property located within the District. More particularly, upon information and belief, garnishee, Bunker One (USA), Inc. owes Three Mile a debt of no less than $515,048.96. The debt can be found within this district because Bunker One is subject to personal jurisdiction in this district.

40. Fourth, there is no statutory bar to recovery.

41. Accordingly, CBR seeks jurisdiction over Three Mile through attachment of its property within this District pursuant to the process of maritime attachment and garnishment to be issued against such property pursuant to Rule B in order to secure its claims in prospective New York abritration. Such relief is proper pursuant to FAA § 8.

42. CBR agrees to release and hold harmless and indemnify the United States of America, the United States Marshal, their agents, servants, employees and all others for whom they are responsible, from any and all liability or responsibility for claims arising from the attachment of Three Mile's property, including, but not limited to, any debts owed by Bunker One to Three Mile.

WHEREFORE, PREMISES CONSIDERED, Central Boat Rentals, Inc. prays:

1. That process in due form of law according to the practice of this Honorable Court issue against Defendant, Three Mile Drydock & Repair, LLC, and Garnishee, Bunker One (USA), Inc., citing them to appear and answer all and singular the matters aforesaid;

2. That this Court issue an Order directing the Clerk of Court to issue process of maritime attachment and garnishment pursuant to Rule B of the Supplemental Admiralty Rules of Procedure over all of Three Mile Drydock and Repair, LLC's tangible or intangible property in this district due, owing, or otherwise claimed as property of Three Mile Drydock and Repair, LLC including, but not limited to, any money owed by Bunker One (USA) to Three Mile Drydock and Repair, LLC;

3. That as soon as practical following the attachment and/or seizure of Three Mile Drydock and Repair, LLC's property, goods, chattels, credits and/or effects herein, a further hearing be held by this Court to hear any objections Three Mile Drydock and Repair, LLC may have to the attachments and/or seizures herein;

4. That the claims of Central Boat Rentals, Inc. against Three Mile Drydock and Repair, LLC be referred to arbitration in New York, New York pursuant to the terms of the above-referenced bareboat charters, and that this Court retain jurisdiction over the claims of Central Boat Rentals, LLC against Three Mile Drydock and Repair, Inc. pending the outcome of any arbitration;

5. That a judgment be entered in favor of Central Boat Rentals, Inc. in the amount of its claims, together with interest, costs and reasonable attorneys' fees incurred by Central Boat Rentals, Inc., and that a decree of condemnation issue against the property of Three Mile Drydock and Repair, LLC for the amount of Central Boat Rentals, Inc.'s claims, with interest, reasonable attorneys' fees and costs; and

6. All other relief to which Central Boat Rentals, Inc. may be entitled to and further relief as justice of the cause may require.

Respectfully Submitted,

*/s/ Elizabeth B. McIntosh*
Elizabeth B. McIntosh
Attorney in Charge
LA Bar No. 36575
TX Fed. ID No. 3133917
Attorney in Charge
**LISKOW & LEWIS**
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
E-Mail: ebmcintosh@liskow.com

**OF COUNSEL:**

**LISKOW & LEWIS**
Elizabeth A. Strunk
State Bar No. 24047536
Fed. ID No. 3865286
100 Fannin Street, Ste. 1800
Houston, TX 77002
Telephone: (713) 651-2900
Facsimile: (701) 651-2908
Email: eastrunk@liskow.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CENTRAL BOAT RENTALS, INC.<br>    Plaintiff<br><br>v.<br><br>THREE MILE DRYDOCK AND REPAIR, LLC<br>    Defendant<br><br>and<br><br>BUNKER ONE (USA) INC.<br>    Garnishees | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No.<br><br>Admiralty |

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, declare and verify under penalty of perjury that

(i) I am the President of Central Boat Rentals, Inc. and in that capacity am an authorized representative of Central Boat Rentals, Inc.,

(ii) I have the authority to verify this Complaint on behalf of Central Boat Rentals, Inc.,

(iii) I have reviewed the Verified Complaint in this matter;

(iv) The allegations of this Verified Complaint are true and correct;

(v) The documents contained in Exhibit A-B to the Verified Complaint are true and correct copies of the originals.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 14, 2025.

Central Boat Rentals, Inc.

_____
Michael Patterson